UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| LUC RICHARD CHOULOUTE, | ) | CIVIL NO. 05-11756-REK |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| UNITED STATES OF AMERICA, | ) |  |
|  | ) |  |
| Respondent. | ) |  |

**GOVERNMENT'S RESPONSE TO PETITIONER'S MOTION TO VACATE,
SET ASIDE OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. §2255**

On or about August 22, 2005, Petitioner Luc Richard Chouloute ("Chouloute") filed a motion styled as Motion to Vacate and/or Reduce Sentence Pursuant to M.G.L. c. 278, 29D. Whereas Chouloute's motion appears to seek a remedy under Massachusetts state law, for purposes of this response, the government addresses Chouloute's claims under the auspices of 28 U.S.C. § 2255.

For the reasons set out below, Chouloute's motion should be summarily dismissed or, in the alternative, summarily denied. Dismissal is proper because the motion was filed outside the strict one-year limitation imposed by the Anti-terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 ("AEDPA"). Beyond this initial procedural barrier, Chouloute's substantive claim is rooted solely in irrelevant Massachusetts state law. Further, even if the motion was argued under applicable federal precedent, the claim would still fail. Due to these procedural and substantive infirmities, this Court

should summarily dismiss or deny the instant motion.

## **The Criminal Case**

1. *Procedural History*.  On May 8, 2002, a federal grand
jury in the District of Massachusetts returned a three-count
indictment against Chouloute, charging him with (1) making
materially false, fictitious, and fraudulent statements and
entries, in violation of 18 U.S.C. §1001(a)(3); (2) use of false
alien registration card, in violation of 18 U.S.C. §1546(a); and
(3) use of false social security account number, in violation of
42 U.S.C. §408(a)(7)(B).  (*See* Docket #1).

On May 9, 2002, Chouloute was arrested on an arrest warrant.
And, on the same day, Chouloute had an initial appearance and
arraignment (Collings, U.S.M.J.), at which time he entered a plea
of not guilty and was released on an unsecured bond and special
conditions of release.  (*See* Docket #6).

During the criminal proceedings, Chouloute, was [and
remains] a citizen of Haiti.  Throughout his criminal case,
Chouloute was privately represented by Attorney John J. Connell,
who also represented Chouloute in his pending immigration
matters.  (*See* Docket #19).  In addition to other specialties,
Attorney Connell, also specializes in U.S. immigration law.  (*See*
Disp. Tr. at 4-5).

On September 25, 2002, Chouloute entered into a written plea
agreement with the government. (*See* Docket #22).  On September

2

30, 2002, the district court conducted a change of plea hearing, at which Chouloute changed his plea to guilty (Keeton, J.). (*See* Docket #23).

On January 15, 2003, the district court conducted a sentencing hearing and resolved all disputed issues. (*See* Docket #25). On January 23, 2005, the Judgment Order issued (Keeton, J.). (*See* Docket #26, #27). The district court sentenced Chouloute to probation for a term of 3 years, and special condition - if ordered deported, he is to leave the United States and is not to return without prior permission of the United States Attorney General. The Court further instructed Chouloute that if ordered deported and actually deported, no reporting to the Probation Office was required and no supervision by the Probation Office would be required during the period when he is outside the United States. The Court also imposed a mandatory special assessment of $300.00. Id.

Chouloute did not appeal his sentence.

2. *The Evidence*.[1] On or about June 14, 2000, Chouloute, a Haitian citizen, illegally entered the United States at Miami, Florida. Chouloute thereafter assumed the identity of Reginald

_____

[1]Summary of the evidence is taken from Chouloute's Presentence Report, dated 12/31/02, which was prepared by the U.S. Probation Office, the Parties' Plea Agreement, Rule 11 Hearing (Change of Plea) Transcript, dated 9/30/02 (*See* Docket #28), and the Disposition (Sentencing) Transcript, dated 1/15/03 (*See* Docket #29).

Pierre, who is believed to be his cousin, and on or about July 11, 2000, Chouloute obtained employment with Argenbright Holdings Limited ("AHL").  Until recently, AHL provided pre-departure checkpoint screening for airline flights departing Logan International Airport ("Logan Airport"), which is located in the Secure Identification Display Area ("SIDA") at Logan Airport. The SIDA area at Logan Airport includes all property and areas of the airport including, but not limited to portions of the terminals and baggage areas, as well as cargo facilities, areas beyond pre-departure passenger security screening checkpoints, a/k/a "sterile areas," jet ways, and the Airport Operations Area ("AOA"), i.e. the tarmac, runways, and airfield.  An individual having AOA privileges is said to have "ramp access" to the airfield areas where aircraft are stored and maintained.

As a condition of employment with AHL, Federal Aviation Administration ("FAA") regulations require each employee working in the SIDA area at Logan Airport to possess a SIDA access badge. SIDA access badges are issued and controlled by the Massachusetts Port Authority ("MassPort"), East Boston, MA, which operates Logan Airport pursuant to FAA regulations.  To obtain a SIDA access badge an employee must truthfully complete, sign and submit an *Application for Unescorted Access Privileges at Logan International Airport*, which is also known as a *Form UA1*, to Massport.  FAA regulations 14 C.F.R. ¶107.2 provides in part that

4

no person may make, or cause to be made, any fraudulent or intentionally false statement in any application for any security program, access medium/badge, or identification medium/badge, or any fraudulent or intentionally false entry in any record or report that is kept, made, or used to show compliance with this regulation, or to exercise any privileges under this regulation.

On or about July 11, 2000, using false information and documentation, Chouloute completed and submitted a signed Form UA1 to MassPort, in order to obtain a SIDA access badge to work at Logan Airport.  Specifically, on his Form UA1, Chouloute provided personal identifying information, which included a false name, namely, "Reginald Pierre," a false social security account number, namely 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, and a false alien registration number, namely, A926081497.  Chouloute also presented AHL and Massport with a fake social security card and a fake alien registration card (also known as a "green card"), and falsely indicated on the Form UA1 that he was either a United States citizen or an alien with an employment authorization or alien registration card.  On his Form UA1, Chouloute also indicated that he was born in Haiti, and falsely stated that he was born on April 3, 1969.

On or about August 2, 2000, based on the false information provided by Chouloute in his Form UA1, MassPort issued Chouloute a Logan Airport SIDA access badge as an employee of AHL.  Through

use of his SIDA badge, and as a worker for AHL, Chouloute had access to the SIDA area of Logan Airport, including, airport terminals, sterile areas, as well as the Airport Operations Area.

During the course of the criminal investigation, Special Agents of the Social Security Administration, conducted a search of SSA databases and determined that the social security account number (SSN: 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) provided by Chouloute on his Form UA1, was not assigned to him, but is assigned to another person, namely, "Reginald Jose Francois Pierre," however, this person has a date of birth of 5/3/59, which was different from the date of birth listed by Chouloute on his Form UA1.  Similarly, INS Special Agents conducted a search of all INS databases for the alien registration number A926081497 provided by Chouloute on his Form UA1 and determined that the alien registration number was not valid and was not issued to him.  Additional investigation by INS Agents disclosed that the required INS Form I-9 (Employment Eligibility Verification Form) previously submitted by Chouloute to AHL also falsely indicated that he was a Lawful Permanent Resident assigned A926081497 and SSN 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.

Further, on October 30, 2000, using his true name and date of birth, Chouloute applied for political asylum with INS to obtain temporary legal status in the United States, and was assigned an alien registration number (# 078-730-753) pending the adjudication of his claim.  Thereafter, however, Chouloute

continued to work at AHL at Logan Airport under the false name and identifiers of Reginald Pierre.

On January 31, 2001, Chouloute married a U.S. citizen, and on February 14, 2001, he withdrew his INS application for political asylum and he and his wife filed for conditional residency status pursuant to his being married to a U.S. citizen. At that time Chouloute was assigned a second alien registration number (# ███████████). On May 9, 2001, Chouloute was issued a social security account number (# ██████████) under the Alien Permitted to Work category, and became currently eligible to work in this country.

Both Chouloute and his attorney, John J. Connell, signed the Plea Agreement after Chouloute "had th[e] letter read to [him] in [his] native language in its entirety and discussed it with [Connell]." (See Plea Agreement at 6). The "Penalties" section of the Plea Agreement clearly states that, along with the other punitive measures Chouloute faced by pleading guilty, he exposed himself to deportation and/or exclusion from the United States by the United States Immigration and Naturalization Service as a consequence of his conviction of the offenses. (Id. at 2). Chouloute also verified that he signed and entered into the Agreement "freely, voluntarily, and knowingly because [he was] guilty of the offenses" charged. (Id. at 6-7).

During the plea colloquy, in the presence of counsel, Judge

7

Keeton specifically advised and cautioned Chouloute as follows:
"...in the circumstances of this case, you may be deportable
and/or excludable by the United States Immigration and
Naturalization Service as a result of the conviction of the
offenses to which you are pleading guilty." (Rule 11 Hrg Tr. at
11). Following this warning, Judge Keeton explicitly asked
Chouloute if he understood; Chouloute responded: "Yes, I
understand." (Id. at 11-12). Following the plea colloquy,
Chouloute's guilty plea was accepted by the district court.

During the sentencing hearing, the district judge sought to
clarify Chouloute's deportation risks, and asked the undersigned
assistant U.S. attorney ("undersigned AUSA") "what exactly is the
situation now with respect to possible deportation?" In response
to this inquiry, the undersigned AUSA stated, among other things,
that "the defendant is aware...it is not an *automatic* deportation
concluding sentencing, he's basically taken into INS custody and
deported...INS will be made aware of the fact that he has been
convicted. He has certain rights under INS in terms of a hearing
and that sort of thing. I'm sure Mr. Connell, who does
immigration work, would be able to explain to the Court more
fully, but my understanding is that he is not automatically
deported, that he has certain rights at this juncture, given the
fact that he is in fact legally in the country at this point."
(Disp. Tr. 3-4)(emphasis added). Chououte's attorney then

sharpened the point, and advised the Court that, in fact, severe immigration consequences ran tandem with a guilty plea. Specifically, Attorney Connell stated that, among other things, "a criminal conviction at the Immigration Court, they do not look behind it. They just deport you....But as a practical matter, in my opinion, deportation is imminent and inevitable. Based on my experience in that court with other defendants who have criminal records, they just do not listen to any arguments anymore sine September 11." (Id. at 4-5). Chouloute was given an opportunity to address the Court, but did not raise any issues or concerns regarding the pending deportation risks. The district judge then sentenced Chouloute and stated that "if ordered deported, the defendant is to leave the United States and is not permitted to return without prior permission of the United States Attorney General." (Id. at 6). Neither Chouloute nor his attorney objected to anything that transpired during this proceeding. (See Id.).

Judgment on January 23, 2003, and Chouloute waived his right to appeal by failing to do so within ten days. See Fed.R. App. Proc. 4(b)(1)(A)(i). Chouloute's conviction thus became final, at the latest, on February 2, 2003. See 28 U.S.C. §2255 ¶6(1); see e.g. Derman v. United States, 298 F.3d 34 (1st Cir.), cert. denied 537 U.S. 1048 (2002)(conviction for federal defendant becomes final when window for appeal closes); Kapral v. United

9

<u>States</u>, 166 F.3d 565, 575 (3rd Cir. 1999)(if defendant does not

appeal, judgment becomes final).  Chouloute was subsequently

taken into administrative custody by the INS on January 25, 2005,

and deportation proceedings thereafter followed.  Chouloute filed

the instant §2255 motion on August 22, 2005.

**ARGUMENT**

    A.    CHOULOUTE'S §2255 CLAIM WAS FILED OVER A YEAR AND A
        HALF AFTER THE TIME LIMIT EXPIRED, AND SHOULD,
        THEREFORE, BE SUMMARILY DISMISSED.

Section 105 of the AEDPA established a strict one-year time

window within which federal prisoners are permitted to file a

§2255 motion.  *See* 28 U.S.C. §2255 ¶6.  This time limit begins to

run from "the latest of:"

> (1) the date on which the judgment of
> conviction becomes final.
>
> (2) the date on which the impediment to
> making a motion created by governmental
> action in violation of the Constitution or
> laws of the United States is removed, if the
> movant was prevented from making a motion by
> such governmental action;
>
> (3) the date on which the right asserted was
> initially recognized by the Supreme Court, if
> that right has been newly recognized by the
> Supreme Court and made retroactively
> applicable to cases on collateral review;
>
> (4) the date on which the facts supporting
> the claim or claims presented could have been
> discovered through the exercise of due
> diligence.

<u>Id.</u>  Because none of the latter three apply to Chouloute, the

10

year during which he could have filed a timely §2255 motion began on February 2, 2003, the day his "judgment of conviction bec[ame] final." Id. at ¶6(1); see also Derman, 298 F.3d 34; Kapral, 166 F.3d 565. Therefore, Chouloute's ability to file a §2255 claim was foreclosed on February 3, 2004, one year after his conviction became final. He actually filed the instant motion on August 22, 2005, more than 18 months too late. This Court should therefore summarily deny the instant motion on timeliness grounds.

      B.    EVEN IF THIS COURT REACHED THE MERITS OF THIS CLAIM, DENIAL IS IN ORDER BECAUSE CHOULOUTE ARGUES IN TERMS OFIRRELEVANT STATE LAW.

Chouloute argues that he was not sufficiently informed by *federal* Judge Robert E. Keeton of the possible immigration consequences of his guilty plea to *federal* charges in the *federal* District Court of Massachusetts. He bases this assertion on a Massachusetts state statute and a Massachusetts Supreme Judicial Court ("SJC") case interpreting this state law. This argument is facially untenable because state law is without force in this case. Further, the argument fails even in terms of the very state law upon which Chouloute leans.

Massachusetts state criminal courts are required to inform pleading defendants of three specific immigration consequences that are possible as a result of their guilty plea, to wit: 1) deportation, 2) exclusion, and 3) denial of naturalization. *See* M.G.L.A. ch. 278, §29D (1996). Chouloute relies on Commonwealth

11

v. Soto, 431 Mass. 340 (Mass. 2002), in which the defendant was warned during sentencing that he could face deportation, but was not specifically informed that exclusion was also a possible result of pleading guilty.  The SJC emphasized legislative intent in holding that, pursuant to §29D, Massachusetts courts were required to explicitly inform defendants of all three possible immigration consequences resulting from a guilty plea.

Chouloute's argument here rests, as he claims that Judge Keeton's "failure" to inform him specifically that he might be excluded from the United States violates this Massachusetts statute.  But he does not address the fact that §29D finds no traction in a federal court.  Chouloute may rely on neither the Massachusetts legislature nor the precedent of Soto, for he was sentenced by a federal judge in a federal court for violating federal immigration and other criminal statutes.  An obvious proposition, state law for several reasons has no relevance to, nor bearing on, the determination of Chouloute's §2255 claim.

Chapter 278, §29D is applicable to Massachusetts criminal proceedings, as ch. 278 governs the Trials and Proceedings Before Judgment in Massachusetts state courts. See M.G.L.A. vol. 45A, Tbl. of Contents.  The federal District Courts, on the other hand, observe the strictures of Federal Rule of Criminal Procedure 11 that governs the requirements for accepting a plea in federal court.  It is a given that there are distinctions in

the procedural standards between state and federal jurisdictions, and that there exists a dual respect of each by the other in this regard.[2]

It is also well established that "Congress possesses plenary authority over immigration-related matters, [and] it may freely displace or preempt state laws in respect to such matters." Herrera-Inirio v. INS, 208 F.3d 299, 307 (1st Cir. 2000). The court went on to state that in such "areas in which plenary federal power exists, 'the Supremacy Clause permits no other result' [than preemption.]" Id. at 307-308, quoting Hodel v. Virginia Surface Mining & Reclamation Ass'n, 452 U.S. 264, 290 (1981). While there is no conflict here between §29D and federal law, it has long been clear that immigration is "uniquely a matter of federal, not local, concern." Id., citing U.S. Const art. I, §9, cl. 1. Chouloute's claim thus cannot ride §29D, for the harm from which he pleas relief is immigration related; state

---

[2]One need look no further than the notion of 'comity,' that is, a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways. In Re Justices of the Superior Court Department of the Massachusetts Trial Court, 218 F.3d 11, 16 (1st Cir. 2000), quoting Younger v. Harris, 401 U.S. 37, 44 (1971). The In Re Justices court wrote at length about the "fundamental policy against federal interference with state criminal proceedings," further emphasizing the duality of sovereignty between the states and the federal government. Id. at 16-17.

law governs not.

Even if this Court could look to state law in review of the instant motion, it is clear that §29D would not help Chouloute. A Massachusetts Appeals Court, later clarifying <u>Soto</u>, held that §29D only gains traction "when a defendant *actually faces* an immigration consequence of which he was entitled to be warned but was not warned." <u>Commonwealth v. Agbogun</u>, 58 Mass.App.Ct. 206, 208 (Mass.App. 2003), <u>rev. denied</u>, 439 Mass. 1109 (Mass. 2003)(Table) (emphasis added). Simply stating that a sentencing colloquy was incomplete, without showing harm, provides no basis for relief. It is apparent that even if §29D were applicable to this case, it would not aid Chouloute: he cannot show *actual* denial of naturalization.

> C.   CHOULOUTE'S CLAIM WOULD FAIL EVEN IF IT WERE BASED ON FEDERAL LAW BECAUSE INS SANCTIONS ARE MERELY IRRELEVANT COLLATERAL CONSEQUENCES OF HIS GUILTY PLEA.

Beyond the initial timeliness barrier, and beyond the inapplicability of his state law argument, even if Chouloute had colored his motion with federal law, it would still fail. Arguing that he received insufficient warning of the possible immigration consequences of his guilty plea, Chouloute ignores the fact that he received far more warning than federal case law suggests and the Federal Rules of Criminal Procedure require.

Chouloute's current detention by the INS is considered "administrative detention [that is] entirely separate from the

14

[criminal] sentence." Mandarino v. Ashcroft, 290 F.Supp.2d 253, 258 n.2 (D.Conn. 2002). The Mandarino court further described INS detention as "part of a penalty that has traditionally been termed civil rather than punitive." Id., quoting United States v. Restrepo, 999 F.2d 640, 646 (2nd Cir. 1993). This demarcation of the INS as an administrative entity, civil in nature and completely separate from the district courts, is what drives the analysis of immigration consequences as collateral to federal criminal judgments. Indeed, because immigration decisions are "beyond the control and responsibility of the district court[, they] remain [] collateral consequence[s.]" United States v. Gonzalez, 202 F.3d 20, 27 (1st Cir. 2000)

Most treatment of immigration consequences in this context centers on deportation, a plea result that is obviously a "serious matter." United States v. Quin, 836 F.2d 654, 655 (1st Cir. 1988). Courts in the First Circuit have held that, regardless of the relative severity of deportation, it remains but "a collateral consequence of conviction[,] legally irrelevant, even as to an outright guilty plea." Gonzalez, 202 F.3d at 25, quoting Quin, 836 F.2d at 655; see also Nunez-Cordero v. United States, 533 F.2d 723, 726 (1st Cir. 1976); Mandarino, 290 F.Supp.2d at 259.

Immigration consequences thus have no bearing on the machinations of the district courts, and here offer no basis for

relief to Chouloute.  The Court of Appeals for the First Circuit
held in 1976 that there was no duty to inform a defendant
pleading guilty that he could be deported as a result of the
plea.  See Quin, 836 F.3d at 656, citing Nunez-Cordero, 533 F.2d
723.

Courts since have also held that there is no requirement
under precedent or Rule 11 of the Federal Rules of Criminal
Procedure that a pleading defendant be informed of the collateral
consequences of his or her plea, even when the consequence at
issue is as severe as deportation.  See e.g. Quin, 836 F.3d at
656; Gonzalez, 202 F.3d at 28; Nunez-Cordero, 533 F.2d at 726;
Mandarino, 290 F.Supp.2d at 259; El-Nobani v. United States, 287
F.3d 417, 421 (6th Cir. 2002), citing United States v. Russell,
686 F.2d 35 (D.C.Cir. 1982); Salama v. United States, 2005 WL
1661830, *2-3 (E.D.N.Y. July 15, 2005).

It is apparent from even a cursory glance at the record that
Chouloute was given far more information regarding the possible
consequences of his guilty plea than is required.  The Plea
Agreement, the Presentence Report, transcripts of the Change of
Plea Hearing and the Sentencing Hearing, and the Judgment Order,
are replete with explicit discussion of both the direct and
collateral consequences of pleading guilty.  The expected impact
of a guilty plea on Chouloute's immigration status, including
deportation, was central to these discussions.  Chouloute's own

counsel, an immigration law specialist, stated in open court that profound immigration consequence, including deportation, was "imminent and inevitable." Disp. Tr. at 4-5. Chouloute's claim, even if it were timely and argued under federal law, should thus still fail.

## CONCLUSION

For the above reasons, the United States of America respectfully requests that this Court summarily dismiss as untimely petitioner's §2255 motion to vacate, set aside or correct his sentence. In the alternative, this Court should deny the instant motion for the above-stated reasons.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

/s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney

Date: October 9, 2005

## CERTIFICATE OF SERVICE

Suffolk, ss.                          Boston, Massachusetts
                                      October 11, 2005

I, Antoinette E.M. Leoney, Assistant U.S. Attorney, do hereby certify that I have served this day a copy of the foregoing by mailing a copy of the same to Respondent Luc Richard Chouloute (*Pro Se*) at Bristol County House of Correction, 400 Faunce Corner Road, N. Dartmouth, MA 02747.

/s/Antoinette E.M. Leoney
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney